Good morning. Illinois Public Court First District Court is now in session, the Second Division. The Honorable Justice Margaret S. McBride presiding, case number 22-1160, National Fire Insurance Company v. Luis Sanchez. Good morning. Before we actually proceed with the arguments, I want to advise the attorneys that I am Margaret McBride, and along with Justice Ellis and Justice Cobbs, we will be presiding over this matter. And I don't see the attorney, one of the attorneys, so perhaps, okay, there we are. Each side will have approximately 10 minutes for uninterrupted presentation, and from that, appellant may save some time out for rebuttal. So with that, I would then ask the attorneys to identify themselves for the record. First, the appellant's attorney, and then appellate. Good morning. My name is Brad Stavis. I represent the appellant, Mr. Sanchez. Good morning, Mr. Stavis. For appellate? Good morning. Todd Schenck on behalf of Appellee's Continental Insurance Company and National Fire Insurance Company of Hartford. Good morning, Mr. Schenck. All right. Thank you for identifying yourselves, and we will now proceed with Mr. Stavis. Thank you. Good morning. May it please the court, counsel. This case before the court involves the application of an insurance policy to an underlying claim that was brought pursuant to the Biometric Information Privacy Act, or BIPA. There are two main issues before the court. The first is whether estoppel applies in this case. And, of course, the appellant is arguing estoppel does apply, and if estoppel applies, our position is that the insurance company, and I'll just refer to them collectively as CNA, if that's okay, would be stopped from asserting any exclusions in the insurance policy to prevent coverage in this case. The second issue, then, is there's no dispute that there's coverage under the underlying policy, and that's pursuant to the West Bend v. Krishna Supreme Court case. At issue is three exclusions that are contained in the policy. And in particular, there is one exclusion, the violation of law exclusion, and that's really been the central issue briefed by the parties. That was the exclusion relied upon by the trial court when it granted CNA's motion for judgment on the pleadings, and has also been the subject of a recent decision in the Seventh Circuit Court of Appeals in the Wendelco case. As part of that, when Wendelco came down in June of 2023, this court asked for supplemental briefs, and each party presented supplemental briefs on that Wendelco case. So, the underlying case I'd like to touch upon just a bit, the insured is, in this case, is VisualPAC. VisualPAC was sued for violations of BIPA. BIPA governs the collection, storage, and use of biometric data, such as fingerprints, retina scans, things like that. In the underlying litigation, Mr. Sanchez represented a class of individuals. They were employees whose biometric information was collected and used and stored by VisualPAC and elite staffing. This underlying litigation is what forms the basis of this particular litigation. VisualPAC applied or tendered this claim to CNA, and CNA ultimately, and I'll go through the timing in just a bit, but ultimately, CNA filed a declaratory judgment action and a motion for judgment on the pleadings, which was granted by the trial court, which then led to this appeal. When the action was initially filed by CNA, the declaratory judgment action, there was initial motion for judgment on the pleadings, and then the trial court actually denied that motion for judgment on the pleadings, finding that estoppel applied. And since estoppel applied, CNA was prevented or stopped from asserting any of these exclusions, any of the three exclusions that they were raising in their denial. CNA then filed a motion to reconsider, and the trial court reversed itself and found that it had to first look at the exclusions to determine if there was even a duty to defend before it would consider estoppel. Of course, our argument is that estoppel should be considered first, and if that, if estoppel applies, no exclusions can be brought up or asserted by CNA. So, as it relates to estoppel, we've cited several cases in our brief, including Supreme Court case Martin, and then two other lower court, appellate court decisions, court construction, and JR construction. And in both of those cases, or in all of those cases, the court set out the framework by which a court should consider whether estoppel applies. Now, to the individual facts of this case, the underlying complaint, the BIPA complaint that was filed against VisualPAC was filed back in March of, I'm sorry, February, February of 2018. That initial complaint was then tendered to CNA on March 8th of 2018. It was not until May of 2020, so over two years later, that CNA sent a letter denying coverage. And CNA did not file a declaratory judgment action until November of 2020, over two and a half years after they were tendered the complaint or certainly had notice of the underlying litigation. And although there are several tests to determine whether estoppel should or should not apply, the test used by the trial court, and of course, the one that we're asserting is just the reasonable time test, that a period of two and a half years is simply too long to wait to take any action, either denying the claim or filing a declaratory judgment action. So based on that alone, it is our position that estoppel applies, and once estoppel applies, none of the exclusions that CNA has asserted in this action can be maintained, and the analysis ends there. Of course, there's more to it, which I will get into. So even if the court, though, were to determine that estoppel does not apply, CNA, again, has raised three different exclusions. The violation of law exclusion is the main exclusion that we've been focusing on. The violation of law exclusion, and in particular, CNA is relying on a catch-all provision in the violation of law exclusion. That violation of law exclusion was the central issue in the recent Seventh Circuit decision in the Wendelco case. And in Wendelco, the court found that on a plain text reading, the catch-all provision has an extremely broad sweep, so broad, in fact, that the exclusion on its face would eliminate coverage for a number of statutory injuries expressly included in the definition of personal and advertising injuries that the policy purports to cover. So, in essence, this clash or inconsistency between these competing provisions of the policy gives rise to an ambiguity leading to the conclusion that the catch-all provision in the violation of law exclusion, And that ambiguity, because it's in an exclusion, that ambiguity must be construed against the insurance company, against CNA, and in favor of the insured. And therefore, there should be coverage and they should not be permitted to raise that exclusion. The parties provided supplemental briefs on Wendelco and whether each party felt that it was consistent with Illinois law. Of course, we believe that the Wendelco court is consistent with Illinois law and the framework, in particular, used by the Supreme Court in the West Bend v. Krishna case. But even going a step further, even if this court were to determine that Wendelco, either they don't want to follow it or it is not consistent with Illinois law, the particular exclusion in this insurance policy still would not pass muster. Mr. Staubis, I'm going to let you know that if you want some time for rebuttal, you're going to have to sort of wind up your argument. Okay. All right. I will go quickly then. Even if the court were used to reject Wendelco and say, okay, we're going to use the canon of adjustum generis or nositor assosus, I'm probably butchering those. But if the court were to determine that you use either one of those principles, we would still say it doesn't apply because the only difference between the Krishna case and this case is that in this case, there is included in the exclusion reference to the Fair Credit Reporting Act. And of course, our position is that the Fair Credit Reporting Act is completely different than BIPA. There may be a few similarities, but in general, those things are different. And we would say that the logic that was used by the district court in the Citizens Insurance v. Thermoflex case should be applied by this court if the court doesn't want to use the Wendelco logic and employs one of these other canons of construction. Nowhere in this particular exclusion is there a mention of privacy. And even if a layperson were looking at this policy, there would be no indication to them that certain statutory – certain statutes with regulated privacy would be excluded from coverage. In fact, just the opposite, because if you look at the actual coverage provision, which there's no dispute that this is a covered claim, the actual coverage provision provides coverage for personal and advertising injury. And one subset of that is oral or written publication in any manner of material which violates a person's right of privacy. So, privacy is actually in the insuring part – is actually in the insuring agreement. So, to then say, okay, we're going to use these other canons of construction and construe any statute based on privacy is now excluded under this violation of law exclusion would wipe out that particular insuring agreement, which provides coverage for oral or written publication in any manner of material that violates a person's right of privacy. All right, Mr. Stavis, we're going to proceed with questioning now, and you'll have a short amount of time for rebuttal. So, with that, Justice Katz, do you have any questions for Mr. Stavis? Not at this time, no. Justice Ellis? I do have a couple. Good morning, Mr. Stavis. How are you? Good morning. Fine, thank you. Good. Thanks for your presentation. So, the catch-all that we're talking about, which I think is subsection four of the violation of law exclusion. Yes. It excludes liability from any federal statute, local statute, ordinance, regulation, any law, basically, that addresses the, and this is what I'm quoting, the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information. Now, let me first ask you that, this. From a plain text reading. Does that subsection four include a violation of BIPA? No, it does not. Well, it could, if read in that strict context, as what Wendelco Court said, that's so broad, it includes not only BIPA, but a whole host of other things. I'm with you. We'll get to that. But the first thing I'm asking is, forget about how broad it is. I mean, some things are written broadly. I agree, it seems like it's written somewhat broadly. But does this include BIPA? If you just read it in that context, just those words, it would include BIPA. And that's what the Seventh Circuit said in Wendelco, right? They said there's no dispute that a literal plain text reading would include BIPA violation. Yes. Okay. All right. And so, if we were to follow the Illinois Supreme Court's lead in the Krishna case, the West Bend case, they went to this canon of e justem generis. I went to the same Latin class you would probably. E justem generis, does that work? And in their case, they were able to limit the reach of this by using that canon. And what Wendelco said is they cannot limit it. They could not use e justem generis or the other one, the gnosis, whatever the other one is called, to limit this provision, right? That's what Wendelco said? Yes. And that's what you said? Yes. Okay. If you can't limit it through a canon, what would normally happen? It seems to me, I'll give you my answer and then you tell me if you agree or not. If a canon of construction meant to attempt to limit something cannot limit it, then doesn't the provision just receive its full natural breadth? In plain language, it says? Unless that full and natural breadth is so broad, which is what the Wendelco court said, is that it's so broad that it wipes out other potential coverage that's expressly provided in the insuring agreement. Anywhere in the insuring agreement? Well, this particular exclusion just applied to the personal and advertising injury coverage. But you think that that analysis is consistent with Illinois law? I do. I think that that's consistent with Illinois law. Yes. Can you cite an Illinois case that supports that proposition? I could not. I cannot cite an Illinois case. I don't know if there is one out there. Yeah, I'm struggling myself to find it. The Seventh Circuit cited some Illinois decision, and there was a group of them where Judge Roedner got this idea of the exception swallowing or nullifying the rule. And that was a situation where the exception for it, and I think it was a homeowner's insurance policy, and there was an intentional act exclusion, like there often are. We'll cover you for negligence, but not for intentional acts, but it was written in such a way that it would not only cover intentional acts, but it would also cover accidental or negligent acts, meaning it would cover everything. The exclusion wiped out the insurance policy coverage completely. Now, I understand that. I think that under Illinois law and probably under the law of any state in this union, if an exclusion were read to completely eviscerate the coverage completely, a court would not enforce that as well, because then the insured is paying premiums for absolutely no coverage at all. But do we have that situation here? Well, I guess I'd respond in two ways. I don't know if it has to be, I don't know if under Illinois law it has to be, it has to render a particular provision wholly illusory. But if there is specific coverage provided, and while certainly exclusions can carve out, so if coverage is given for a whole subset of items, an exclusion can come in as long as it's very specific, can come in and carve out certain exceptions to that. But that's not what we have here. We're not talking about just the TCPA or canned spam or fair reporting act. We're talking about things now that CNA wants to expand to all privacy. And that's too broad for an exclusion and how exclusions are interpreted under Illinois law and how they're treated by Illinois courts. Well, all statutes that govern privacy, not common law, right? Well, it says here the title is recording and distribution of material or information in violation of the law. That's the title. And I understand that that may not be specifically in number four. Right, but are you arguing right now that subsection four, the catch all that we've been talking about, would bar common law claims? I've not read that in your argument. That would be mean to me. If you read the actual language and the title to the exclusion isn't conclusory, that's true. But there's just enough ambiguity in the exclusion, and that creates more ambiguity when you say a violation of the law. Although the plain text of number four does not have any law. Wendalco, the Seventh Circuit decision, did not think that this catch all included anything other than statutory violations, right? Wendalco is your case. Yes. Yeah, you want us to follow it. I don't read the catch all as anything other than statutory violations, and neither did Wendalco. If you disagree, feel free to disagree. I just didn't think that was your position. No, it is not. I'm just raising another point where there could be an ambiguity, and we don't draft the insurance contract, of course. No, of course, and we can serve in your favor, obviously, if there's ambiguity. Okay, so Wendalco pointed, and I'll be brief here. If we were going to employ this reason that an exclusion has to totally eviscerate, or maybe I'll use your word, maybe not totally, but largely eviscerate the coverage provision, would we not have to look at the entire subsection for personal and advertising injury? There's subsection A, B, and C, which deal with things like trespass and wrongful eviction, and then there's the one that you're relying on, subsection E, which talks about violation of personal privacy. Then there's the ones that the Seventh Circuit really laser-focused on, which was like the Copyright Act and copyright and patent infringements. Shouldn't we, if we're going to employ this reasoning, look at all of those and see if the provision really wipes all of that out? Or is it okay to just point to a couple and say we'd wipe those out, even though they're not at issue in this case? I certainly understand it's a fine line, but if a particular insuring provision absolutely provides coverage to a violation of a person's right of privacy, and then an exclusion is, the insurance company tries to interpret an exclusion to deal with all statutes of privacy, that, while it doesn't completely wipe out the personal and advertising injury coverage, it wipes out a significant portion of it. Well, subsection E, violation of personal privacy, the subsection you're relying on, there are lots of common law claims for violation of personal privacy, aren't there? There's others, yes, for privacy of seclusion and secrecy, other items, yes. Okay, those are not wiped out by this exclusion. Those would, if it's a common law claim? Correct. Correct, that would not be wiped out. So if we were to come, so, and this will be my end point. The Seventh Circuit, as I said, really looked at the copyright stuff. The last two parts, and I don't have it right in front of me, if there's a lot here to look at, I'm trying to find it. But it was the Copyright Act, the Lanham Act, those infringement things, which are purely statutory. And the Seventh Circuit said, well, if the exclusion wipes out all statutory violations dealing with the stealing of information and dissemination, that would eviscerate those particular ones. Right? The Copyright Act, the Lanham Act, those kind of things. So you'd have coverage that is expressly provided, and an exclusion that basically wipes it out completely. Yes, libel and slander, yes. Well. The Act. Libel and slander, though, defamation is a common law claim more often than it's a statutory claim, right? Yes. I took their point about the Copyright Act because there is no common law copyright act in Illinois, and I don't think anywhere anymore. But if we had that case, if we had a Copyright Act case in front of us right now, instead of the BIFA, instead of an underlying BIFA thing, we had an underlying Copyright Act case. And we compared it to this amendment, this exclusion. Presumably, we would not enforce the exclusion because the two things would be in direct conflict. We'd find an ambiguity and resolve it in your favor. Or, you know, there's that canon of interpretation that says you interpret something so as not to render something else meaningless, and you'd get to the same result, that you get coverage. But why are we doing that in this case when that provision is not before us? Why are we going to another part of the insurance policy and saying there might be a conflict there, not here, but there, and therefore, we got to wipe the whole thing out? That's what I don't understand the Seventh Circuit's reasoning. And I don't see how is that Illinois law? Well, and that's what I understood, you know, the supplemental briefing done by the parties. And that is also the reason why our fallback argument is even if this court does not follow Wendell Co. and you go under Justum Generis, it still doesn't fit. It still won't work because the Fair Credit Reporting Act and BIPA are totally different statutes for a number of reasons that I could get into, which are laid out in the Citizens Insurance v. Thermoflex case. So it doesn't have to follow Wendell Co., this court, but, you know, we, of course, would like it to. But even if it goes under the canons of construction utilized by the Krishna court, it still did not pass muster. All right. Thank you very much. I don't have any questions. Justice Tapps, any more based on those? All right. Thank you, Mr. Stottis. We'll proceed now with Mr. Schenk. Thank you. May it please the court, counsel. Estoppel cannot apply unless an insurer has breached a duty to defend. And the law is clear that an exclusion that clearly applies to the allegations of the underlying complaint relieves the insurer of a duty to defend. Here, the three exclusions we've raised clearly apply to the Sanchez action, and therefore, CNA did not have and did not breach a duty to defend. Therefore, Estoppel cannot possibly apply. So I'd like to now talk about the exclusions, the violation of law exclusion first. The Sanchez lawsuit alleges VisualPAC collected and disclosed biometric information in violation of BIPA. The violation of law exclusion clearly applies to that type of conduct. Unless the exclusions against public policy, there's been no suggestion to that effect or the exclusion makes coverage illusory. As even the Wendalco Court admits, it doesn't. There are common law claims that are wholly untouched. There are a number of other enumerated offenses within the definition of personal injury that are wholly untouched or the exclusions ambiguous. And that really is the principal argument we need to talk about here today. And that question boils down to this. Are there two reasonable interpretations of the catch-all in subparagraph four of the violation of law exclusion, one which applies to BIPA violations in the Sanchez lawsuit and one which doesn't? Unless there are two such reasonable constructions, we don't have an ambiguity here. And in answering that fundamental question, this court should not make the same mistake made by the Wendalco decision or similar decisions that looks to other types of claims that aren't presented here, such as intellectual property claims, and consider whether there might be an ambiguity in applying the catch-all to those other types of claims that aren't at issue here. Either the catch-all is ambiguous as applied to the Sanchez lawsuit or it isn't. The Founders versus Munoz decision by the Illinois Supreme Court cited in our supplemental brief makes this point very clearly. The court found an exclusion was ambiguous, but it applied to the factual situation presented. And the court said, I'm not going to consider whether it might be ambiguous as to other types of situations that aren't at issue here. That's not before us. Therefore, if we shouldn't be considering that hypothetical Copyright Act case that Justice Ellis mentioned, that's not before us. If you happen to get that case in the future, that's the point in time to decide whether the catch-all is ambiguous as to those types of claims. And if it perhaps is, there's two separate reasonable interpretations. You'd adopt the narrower of those interpretations. You wouldn't throw the catch-all out altogether. And once you've narrowed the catch-all in that hypothetical situation, you would decide whether it applies or not. And this leads me to another point I think is very important. The Wendolko case and some similar cases in VisualPAC's supplemental brief rely on a supposed legal principle that an exclusion is unenforceable unless it is clear and free from doubt. That is not accurate Illinois law. That's a conflation of two different sets of rules. First, there's the rules of construction, which set the boundaries for an exclusion. If an exclusion is clear and unambiguous, the boundaries are set by its plain language. If an exclusion is ambiguous, i.e., subject to two or more reasonable constructions, the rules of construction set the boundaries by adopting the narrower of those competing constructions. Second, there are the rules on the duty to defend, which say an insurer has a duty to defend if a claim is within the insuring agreement unless it is clear and free from doubt that the exclusion applies to all of the allegations. So you can see when someone says an exclusion isn't enforceable unless it's clear and free from doubt, that's a conflation of these two very different concepts. So here what the court needs to do is set the boundaries for the catch-all. We submit it should be the boundary should be the plain and unambiguous language of the catch-all itself. Once you've set those boundaries, you look at the allegations in the Sanchez lawsuit and decide whether they clearly and without doubt fall within those boundaries. We submit that they do. Consider Krishna. Krishna found the catch-all was ambiguous, but it didn't say it's unenforceable. The court just adopted the narrower of the competing constructions, which in that case it said are statutes dealing with methods of communication. If the underlying case there had been involving a statute dealing with methods of communication, let's say a TCPA claim, it would apply. But it was because the statute didn't involve methods of communication that the catch-all didn't apply. Not because the catch-all was subject to two different potential reasonable constructions. So we'd ask this court to follow the logical progression that the Fourth District applied in Lincoln-Logan Mutual v. Forenshaw. That's 722 Northeast 2nd, 239. This case was actually cited by Wendolko, but not applied correctly. In that case, the Fourth District found an intentional acts exclusion was ambiguous because it had two competing reasonable constructions. The court adopted the narrower construction pursuant to the rules of construction. Then it went and applied the rules on the duty to defend and said the allegations still clearly fall within even that narrower scope. And therefore, the insurer has no duty to defend. So too here. If our catch-all in the violation of law exclusion is ambiguous, it isn't. But if it were, it doesn't mean it's unenforceable. You would simply adopt a narrower reasonable construction, which would be statutes that protect privacy. Mr. King, I'm going to ask you to wind it up so we can ask some questions of you. And the statute fits comfortably within that scope, and therefore CNA has no duty to defend. If I might just comment, you know, a minute or so on the other two exclusions raised, I can then conclude that's OK. The access and disclosure exclusion is very broad. It applies to access or disclosure of confidential or personal information or any other type of nonpublic information. VisualPAC says there's no common thread among the examples given. Well, if that's true, then you can't narrow the broad categories through use of the canons of construction. They remain broad. And if they're broad and BIPA fits squarely within it, that exclusion applies. Lastly, the employment-related practices exclusion. The one point I want to make here is that courts have suggested that exclusion is ambiguous in the BIPA context, because BIPA violations aren't directed at or targeting specific employees. That's not a reasonable construction of this exclusion, limiting it in that way. If you were to adopt that construction, for example, claims by employees who are affected by a broad-based policy of racial discrimination or ethnic discrimination, for example, their claims wouldn't be excluded because it's a broad-based policy. But no one would ever reasonably suggest an employment-related practices exclusion doesn't apply to claims by individuals who've been harmed by such a broad-based discriminatory policy. But in any event, my last point here, even if you could reasonably say that the employment-related practices exclusion applies only to actions that are targeted at or directed at individuals, it would still apply here. This is not a case, like some courts like to talk about, about hand scans. Sanchez's case is about invasions of privacy. That's the only way it falls within the insuring agreement in the first instance. The Illinois Supreme Court said a BIPA case is a violation of privacy case. Violations of the right of privacy are necessarily individualized harms, not collective harms. So a violation of the right of privacy is necessarily directed at or targeted at those employees whose individual statutory privacy rights have been violated. So really, there's no reasonable construction of the employment-related practices exclusion that does not reach the BIPA claims in the Sanchez lawsuit. So for these reasons, we'd ask that the trial court's judgment in our favor be affirmed. Thank you. All right. Justice Cobbs, any questions? No, thank you. Justice McBride? Justice Ellis? I don't think so. Thank you. And I have no further questions. You may have a one-minute brief rebuttal, Mr. Stavis. Sure. Thank you. First, I won't get into the other two exclusions. Those were briefed quite extensively in our briefs and we simply don't have the time. Or the estoppel, again, that was fully briefed. The one thing I want to touch upon was this common thread of privacy and just wanted to reiterate that. If the common thread that CNA is asserting is privacy, looking at that particular exclusion, nowhere is privacy mentioned. Coverage actually provides for, you know, coverage for a violation of privacy. That's a person's right of violation, oral written publication in any matter of material that violates a person's right of privacy. So if I, as a lay person or business person, are looking at this, there's no indication in this exclusion that BIPA is excluded. If they wanted to exclude BIPA, they should have years ago included that exclusion like they did with the Telephone Consumer Protection Act, CAN-SPAM, and the Fair Credit Reporting Act. BIPA has been around since 2008. And there's been no exclusions. There's been no Illinois endorsement to add BIPA. And for that reason, I would suggest it wasn't meant to be excluded and it shouldn't be excluded in this case. Thank you. All right. Any other questions by panel members? No, thank you, Justice McBride. Thank you, everyone. All right. Thank you both for your arguments today. The matter will be taken under advisement. Thank you. Thank you.